Thank you, Your Honor. Good morning to all of the Court. May it please the Court, my name is Timothy Cassuni. I'm counsel for the Appellant Craneveyor Corporation. I would like to start by addressing a communication from the Court roughly a week ago about an answer to, and that related to the time difference between the adoption of the Etiwanda Plan and the annexation resolution. And I wanted to just briefly go through the chronology. So in October 2019, the Etiwanda Plan was adopted. In July of 2020, there was an annexation via a separate resolution. The case, the initial complaint, was then filed on September 30, 2021. And those three dates are really the relevant dates to answer the Court's inquiry. For purposes of statute of limitations for this facial regulatory taking claim, and I would preface that by saying nothing's been developed, no issue was raised at the trial court level about a statute of limitations issue. But I do want to address the Court's question. Well, the question, I think, was not so much about the statute of limitations as, am I correct in understanding that at the time the plan was adopted in October 2019, it didn't actually do anything to you, right? Because the plan was the city's plan, and the area that you owned had not been annexed by the city, right? That's correct, Your Honor. It's really, the harm was created once the annexation was accomplished in July 2020. So... Well, then how is this a facial taking? It's a facial taking because the plan was in a... The plan, the Etiwanda plan was adopted in October of 2019. The resolution that brought my client's properties into the jurisdiction of the city was in July 2020. So once that was accomplished, they got downzoned. And with respect to the Crane Bayer Parcel 1, we can get into that in a moment, deprived that 20-acre Parcel 1 of any economic use. Let me ask you this. Would you argue that the county entity or the city has waived this particular argument since they didn't raise it? Well, certainly. It wasn't... This wasn't raised... Certainly the case that the court cited in its communication to council was not never brought up. This argument was never brought up. The idea that we had not even adequately alleged a harm based on the timing of the adoption of the plan and the annexation was never brought up. So certainly there's a waiver. To the extent that any of the court's inquiry remotely relates to a statute of limitations issue, and forgive me if that's really not where the court wants to go with this, the statute of limitations for purposes of this appeal has certainly been waived. It's not a... Statute of limitations will not be a jurisdictional bar to our claim. If they want to claim a statute of limitations issue, if the case is remanded, they can do so when they answer the complaint, which... And there's been no answer yet. We're just on a motion to dismiss. And so 42 U.S.C. 1983, for purposes of a regulatory taking claim, the statute of limitations for the spatial challenge would track the personal injury statute of limitations in California law, which would be CCP 335.1. At the time of the case, the court referenced it was a one-year statute. Years ago, that was extended to a two-year statute of limitations. So the earliest potential date would be, for the running of the two-year statute, would be the adoption of the plan. But even if it's assumed that the harm occurred, and an argument could be made that the harm occurred when the annexation resolution was adopted in July 2020, we're still well within the two years for the filing of the claim. So what I'd like to do next, Your Honor, is sort of address the request for judicial notice issue. There was a request for judicial notice, and in reading the... We did an opposition, and then the city filed a reply. In reading the reply, I wanted to maybe try to clarify something. In the reply, the city states at page two, quote, the city does not seek judicial notice of either the county's designation of the permitted property use or the county's designation of legal ownership. If the purpose of the judicial use... That's fine. To the extent there is a development of a factual record in the motion to dismiss, because it is on the basis of judicial notice in the trial court and the allegations of the complaint, the only record that this court has on the issue of permitted use with respect to the two Crane Bayer parcels is that Crane Bayer 1, the 20-acre parcel, 22-acre parcel, was assigned a sub-zone and had a sub-zone designation of a fault zone. So, counsel, let me ask you a more fundamental question about that, which is your position is that because it's in a fault zone, assuming that it is in fact in a fault zone, that no review of the plan, where... Can you point me to where in the plan it says that no development is permitted in a fault zone? Well, there is no reference to the fault zone in the plan, Your Honor. Okay, but I understood. Maybe I'm not understanding your claim. I thought your claim was that you have a facial challenge to the plan because on its face, the plan prevents you from building anything in your property that's in the fault zone. And if the plan doesn't actually say that, how is it a facial taking? Well, it's undisputed that the two Crane Bayer parcels, and all the parcels for that matter, are generally in a rural conservation district. Okay, then there are the creation of sub-zones. For purposes of this appeal, Crane Bayer 1 was given a sub-zone through our request for judicial notice. When you actually look up the zoning for Crane Bayer 1 through the request for judicial notice at the trial court, it said fault zone. Right. There is nothing that indicates any allowable development. In fact, the plan is that that does not allow for development because the plan doesn't even address the fault zone one way or the other. Well, I mean, so the plan mentions fault zones, but it mentions them in, I guess it's 2.4 F, right? But after a description of the biology and topography of the region, you know, that whole section of the plan reads more like an essay on the natural history of San Bernardino County than it does like a statute or a regulation. And then you get to the discussion of fault zones, and it says they're a major constraint to development. But as I read the plan, it seems like you could read that as just sort of a description of a fact about geology rather than anything that the city was actually legally enforcing against you to stop you from building there. So where do you get the idea that there is some legal prohibition on construction within a fault zone? Well, what I would say, Your Honor, is a reference to the Etiwanda plan. It states, and this is on page six of our complaint, paragraph 21. It says the subzone identifies lands used for flood control purposes and to support public with respect to the utility corridor designation. Development of habitable structures is not permitted within this subzone. Now, there is, apparently, the city claims there's an exception if there was an annexed property. But what I want to emphasize, Your Honor, is that... I'm sorry, but that was the passage you just read. That's about utility corridors, right? Correct. That's not about fault zones. Correct. The point we wanted to make, Your Honor, is that a fault zone designation is not addressed for what is permitted or what is not permitted in the Etiwanda plan. Then how can you have a facial challenge to the plan? If we look at the build, then maybe there is, in fact, some prohibition on your building. But if so, it's not coming from the face of the plan, right? Right. And so you then fall back on what can this 22-acre parcel, what is it zoned? And it's not zoned utility corridor. It's not zoned open space. It was zoned fault zone. Now, part of the problem we're running into is your court's rightly asking, well, what does a fault zone allow you to do? That really is more a matter if they want to do a summary judgment motion and actually develop the record for what is allowed for a fault zone under the Etiwanda plan. That should have been done through a summary adjudication or a summary judgment motion. But we've alleged, and there was nothing developed in the trial court by the city to address what a fault zone does or does not accomplish. They did not oppose the request for judicial notice. So the record as we are here today is that that property is designated a fault zone. So if the city wants to try to bring in a request for judicial notice that, no, it's not a fault zone now, well, it's a little too late to do that. And as I was mentioning a few minutes ago, they're claiming and conceding in their reply on the judicial notice, they're not seeking judicial notice for the purpose of determining what is a permitted use on the property. So we have no factual record here to determine what is or can or cannot be accomplished with a fault zone designation. But more importantly, Your Honor, I don't want to get too hung up on that because let's just assume for purposes of argument that there is some use allowed within a fault zone. It's undeveloped factually. Well, can I, before you, and we'll give you, make sure you've got time for rebuttal, but when you say it's undeveloped factually, isn't it a legal question? I mean, the plan has the force of law, right? And it either does or does not permit you to build things there. So I'm not sure I understand the reference to factual development on that point. Well, what I mean by factual development is really the judicial notice aspect of the trial court. But that goes to whether this particular parcel is in a fault zone. And that, I get, seems like a fact question. But what does the plan say about what's allowed in fault zones? Seems like a purely legal issue, isn't it? It doesn't say whether, well, it doesn't even address a fault zone. So let's assume. And why is that not fatal to a facial challenge to the plan? Right, and that's where I wanted to go. The premise of Your Honor's question seems to be the premise of the court's inquiry. Well, you at least one predicated on Lucas. I mean, there's the Penn Central, maybe different. Correct. And so I question that premise. And that's the huge focus of our briefing, is I question that premise. We don't have to show a complete ban on any economic use at all to win on a facial taking claim. That's the entire purpose of Penn Central. You're 40 years old, and you then segue into the Penn Central factors. So the city seems to be saying, even under Penn Central, unless you can establish between a 96% and 99% diminution in value, you can't even win on a Penn Central claim. And so we question the premise of the court's inquiry. And I can reference the rest of that in my rebuttal time, Your Honor. Okay, so we will give you two minutes for rebuttal.  Mr. Lee. Thank you, Your Honor. Stephen Lee on behalf of the city of Rancho Cucamonga, of Richards, Wadsworth, and Grishawn. May it please the court. So this case presents a takings case in the context of the city's adoption of the zoning, essentially. And here, as Crane-Bear's counsel alluded to, this resulted in downzoning. The specific plan authorizes the development of at least one residential unit per 10 acres located in Crane-Bear's property. And Crane-Bear was apparently expecting to develop a greater density of development than what the specific plan authorizes. The plan was adopted in October 2019. The annexation occurred in July 2020. There's a nine-month gap. This is the facials taking. Why was that issue not raised by the city? And if you didn't raise it, did you waive it? So the city didn't address the nine-month gap as a nine-month gap per se. What I think the court is getting at is they're trying to facially challenge a specific plan that does not subzone a fault zone for their property. The specific plan has no mention of fault zone as a subzone designation for what can and cannot be developed there. And so the city pointed that out at the district court level and in its Ninth Circuit briefing, saying that what Crane-Bear is really complaining about isn't a fault of the specific plan, because the specific plan doesn't designate their property as a fault zone zoning. Instead, I think we rightly pointed out that the fault zone designation doesn't appear anywhere in the specific plan in terms of what can and cannot be developed. As Your Honor pointed out, there is some bit of allusion to a fault zone in a geographical sense, in a geological sense of what's constituted there, but there's no prohibition of what can be developed or cannot be developed in a fault zone in the specific plan. And so the city, you know, sort of put that forth in the district court proceedings to say what Crane-Bear is really complaining about isn't accomplished by the specific plan. So it's odd that Crane-Bear is challenging it on that basis. And what do we make then of this, I guess it's a record from the city website or the online records lookup function that the district court took judicial notice of, that reflects what appears to be an official designation that this is a fault zone. So if the fault zone isn't actually a designation created by the plan, like what does it mean that it says that this property is in a fault zone? So I'd say it means exactly that. That the city's classification of zoning for this property is that it's in a fault zone and nothing more because the specific plan here is what's at issue. And Crane-Bear is arguing because of the specific plan, I was designated into a fault zone and I can't develop anything here. And that's not the case. So you're saying that the city maintains records of who is and who isn't in a fault zone, but why is it doing that if that doesn't have any legal significance? It doesn't have legal significance insofar as a challenge to the specific plan, but I think it does have legal significance in regard to future development because if something were, for example, in a fault zone, that may be a consideration of what would be allowed to be developed in that area under the plain language of the specific plan, however, which is the governing document for what can and cannot be developed in the entire plan area. You know, this property is allowed one residential unit per 10 acres. And so that is, they could build, and the parcel is just over 20 acres, if I recall. Correct. So they could put two residential units on it as you interpret the plan. Correct, Your Honor. Regardless of whether or not it's in a fault zone. Yes. Under the specific plan, there is no prohibition on building if something is in a fault zone. This is designated as, you know, in the open space and flood utility areas. And so under the provisions of the plan, you get one residential unit per 10 acres. In fact, if, you know, I don't want to create liability for the city, but I would be very uncomfortable in saying, oh, you can't develop in a fault zone in violation of what is apparently, you know, the plain language of the specific plan saying you can. And so in that regard, I think we've, you know, presented the issue that what Crane-Vera is challenging all along is a designation that doesn't exist in the specific plan because the specific plan doesn't have a subzone designation for a fault zone. And we raise that to both the district court and Your Honors here on appeal. And to give some context here, the proceedings at the district court level went for motions to dismiss, and Crane-Vera took great lengths to say, no, we're not bringing in as applied challenge, which would then implicate, you know, what you could actually do with this particular property given its fault zone designation. We're not bringing this as applied challenge because they didn't meet the rightness requirements for that. They didn't exhaust the remedies to actually submit a plan and have that plan rejected and, you know, apply for a variance and have that rejected. Because of that defect that we point out at the motion to dismiss stage, they instead pivoted and said, no, we're only bringing a facial challenge. And that's why, you know, the idea that, you know, all along we said a fault zone designation is not something that's the fault of a, excuse my repetition of the word there, it's not the fault of the specific plan, but instead, probably the annexation is an idea and an argument we've maintained at the district court and here before you. With regard to the Cranevair's arguments on the judicial notice, the purpose of the judicial notice is not to take judicial notice of a zoning designation per se for the Cranevair property. It's really to match up where this property is located as it relates to the specific plan. So that we can show to the court this property is located in an area for open space and utility corridor that allows for the development of one residential unit per 10 acres. And so the, you know, the judicial notice here is, I think, proper, especially in light of Cranevair taking judicial, requesting judicial notice in the district court proceedings, a very similar document in the city's, you know, zoning designation, essentially, the city's record. And what are we, I mean, what about the fact that the, I mean, the thing you're asking us to take judicial notice of is this map from the county and the county, you know, says that it, you know, makes no representation as to the accuracy of the map. So isn't that a problem under the rule 201, you know, accuracy could not reasonably be questioned if the entity that created the document is not making a representation of its accuracy? And my return to that, Your Honor, is that, you know, the county website says that the information found, quote, the information found on this portal is for the purpose of making fair and accurate property assessments. And, you know, in that regard, I believe in the accuracy of the county's records and that it would be subject to judicial notice in that regard. With regard to, you know, Crane-Bayer's allegations about what can and can't be done for this property, I think it's apparent that, you know, Crane-Bayer is bringing a Lucas challenge, and that's a high standard. As a facial challenge, you know, you have to show that you've been deprived of all economically beneficial use, and he hasn't done that. It's shown through the plain facts of the specific plan that you can develop one residential unit per 10 acres on their properties. The development potential there is enough to establish an economically beneficial use such that a Lucas taking would not be viable here. In fact, the plan goes even further to provide further economic benefits through the transfer of development rights program. Under that program, Crane-Bayer could sell its development rights at an up to 3-to-1 ratio, a 3-to-1 markup, because the city's incentive to conserve open space is so great. The city wanted to incentivize that, and under that TDR program, a further economically beneficial use is preserved under the specific plan. They're going to mark up this by three times in a fault zone? It's not a certainty because the plan says a 3-to-1 ratio could be applied depending on the property. We would have to essentially go into an as-applied challenge to see what would actually happen with this property. I submit what's happening here based on Crane-Bayer's representations that it's only submitting a facial challenge, but, you know, it is possible given what this plan says, that, you know, the city wants to incentivize the preservation of open space and is willing to go up to a 3-to-1 ratio. I mean, so even if we thought that the TDR, you know, had some economic value and there seems to be some dispute about that, I mean, does that defeat a Lucas claim, or is it more appropriate to just view that as some compensation? I mean, like, you would still be taking the property in the sense of preventing them from doing anything with it, but maybe if the TDR is worth enough, you know, it would constitute fair compensation for it. Is that the way we should think about it? I think it would independently defeat a Lucas claim because it establishes an economically beneficial use in being able to sell your property rights, your development rights. Is that, I mean, I guess I always thought of use in the Lucas sense as being, like, you can actually do something with the property, not just someone gives you money for not doing anything with the property. That seems more to go on the compensation side of things. I think that's a distinction where in being able to... I wouldn't necessarily say you could just divide up the use in terms of just a pure sale because this is still considering, in some sense, a use for the property. You have to have development rights to a property, and if you do have development rights to that property, you can forego those development rights, that use, in favor of a less traditional than your honor might seem to think use of selling the development rights to that property. And it's not in the sense of a typical sale of just a property for a one-to-one ratio or benefit. Here, it's the possibility of a further economic benefit where the property owner would be further compensated under the specific plan for having open space preserved and applying that up to three-to-one ratio. With regard to the Penn Central factors, I know the parties have cited plenty of cases both ways asking whether Penn Central is applicable to a facial-taking analysis. And I would respectfully submit that, you know, it's not. The U.S. Supreme Court in Hodel said, you know, because of Apelli's taking claim arose in the context of a facial challenge, it presented no concrete controversy concerning either application of the act or particular surface mining operations. And Penn Central is all about the specific application of a regulation to a specific piece of property. And Hodel in 452 U.S. 264 is apparently designating that, you know, that kind of ad hoc factual inquiry on a as-applied basis doesn't apply to a facial-taking claim. The Ninth Circuit cases that were both cited by Crane-Bayer and the city, Guggenheim and Laurel Park, they both, you know, noted that they assumed without deciding that the Penn Central factors would apply to the facial-taking claim. But here, I don't think the court needs to make that assumption. And, you know, in light of what the U.S. Supreme Court has decided in Hodel. But even if the court does go there, I want to briefly address the three factors under Penn Central where they cannot meet a facial-taking claim under Penn Central. First, the economic impact doesn't weigh in their favor. Their mere diminution in value doesn't create an economic impact sufficient to constitute a taking under Penn Central. That's from Rancho de Calistoga. And here, at best, there is a mere diminution in value in the downzoning of Crane-Bayer's property. They're still allowed to develop residential units on their property. The reasonable investment-backed expectations here also don't weigh in favor of a taking because there is no federal constitutional right to be free from changes in zoning laws. The Ninth Circuit has been clear about that in Bowers v. Whitman and in Lakeview Development Court. And here, that's exactly what happened. The city changed a zoning law and, you know, no property owner is immune from changes to zoning law. So you can't reasonably expect to purchase a property and not be subject to subsequent changes in zoning laws. And finally, the character of the government action here. There's no physical invasion. And the city acted out of public interest to try to preserve open space, to preserve uniform and safe development in the specific plan area. And I see I've run out of time, so... Thank you. Thank you very much, Your Honors. Mr. Cassini, we'll give you two minutes for rebuttal. Thank you, Your Honor. Before we started the argument, I did convey to the court that I wanted to reserve five minutes for rebuttal. Well, but you used up all of your time when you were up the first time. Okay. All right. Well, that's fine. I can do this in two minutes. This is not simply a Lucas challenge. This is also a Penn Central challenge. Hodel does not say you cannot do a facial Penn Central challenge. In fact, we address this at pages 18 to 19 of our ply brief. The plaintiffs and Hodel make no allegations concerning the impact of the challenged regulations on any specific property. Not surprisingly, the court in that case ruled Penn Central was not an appropriate doctrinal vehicle for such claim. In this case, 29 acres, if you combine both parcels, prior to the annexation, would have allowed for up to the development of 29 homes. Crane Veyer valued $400,000 for the Crane Veyer 1 parcel, actually for both parcels. That's been a factual question about the extent of the diminution in value. There must be a remedy for a down zoning of 29 homes to two or three homes maximum. There is no formula to say that's the whole purpose of Penn Central is an ad hoc factual inquiry. The character of the government action does not mean whether it's a physical taking. A physical taking would be a per se physical taking. This is a regulatory taking. Further, your honor, if these issues are valuation issues for the most part, and last point on the TDRs, I would point out that the city's own plan recognizes that the TDRs are no guarantee that there's gonna be a buyer or any marketable value for a TDR. It's purely speculative. We characterize it as a sham. We've briefed it extensively. So your honor, I just wanna sum up. The point you were addressing earlier about the fault zone, even if it's assumed for purposes of argument that a fault zone designation will allow up to one structure per 10 acres, that still is a down zoning from 29 homes to three homes. And there was nothing in the law, but let me phrase it this way. Let's assume we did an as-applied challenge and we go to the city and we say, we wanna build 29 homes. The city's gonna say, no, you can't. You can only build three. Go read the plan. At that point, it's an as-applied challenge that somehow transforms this case to have more procedural legs behind it. It's the same thing. It's the same scenario, whether it's as-applied or a facial challenge. So I would wanna focus on the Penn Central area. There's no categorical band. There's no formula for Penn Central that would subject this case to dismissal at the pleading stage as opposed to a summary adjudication stage. Let the city bring a motion for summary adjudication or summary judgment, which makes sense, Your Honor, because then we can flesh out really what's going on with the fault zone designation. Okay, thank you. Thank you, counsel. We have your argument. Thank both counsel for their helpful arguments this morning and the cases submitted. Thank you, Your Honor.
judges: MILLER, MENDOZA, Moskowitz